IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY T., | ) | |
| | ) | Case No. 21-cv-327 |
| Plaintiff, | ) | |
| v. | ) | Judge Jorge L. Alonso |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# Memorandum Opinion and Order

Plaintiff Anthony T.[1] filed this lawsuit seeking to overturn the Commissioner of Social Security's (the "Commissioner") denial of his application for social security benefits. The parties have filed cross motions for summary judgment. For the reasons below, the Court denies Plaintiff's motion and grants the Commission's motion.

## I. Background

The Court takes the following facts from the administrative record. Plaintiff applied for social security benefits under Titles II and XVI of the Social Security Act on March 31, 2010. Plaintiff's case oscillated several times between federal court and the Social Security Administration ("SSA")—mostly recently being remanded back to the SSA for further proceedings after an agreed motion for reversal. On September 23, 2020, after a hearing on September 1, 2020, an administrative law judge ("ALJ") denied Plaintiff's application. Plaintiff did not file exceptions to that decision and the Appeals Council did not assume jurisdiction;

---

[1] Pursuant to this district's Internal Operating Procedure 22, the Court refers to Plaintiff by his first name and the first initial of his last name or simply "Plaintiff." The Court also substitutes Kilolo Kijakazi, the Acting Commissioner of Social Security, as the Defendant in this case per Fed. R. Civ. P. 25(d).

therefore, the ALJ's decision become the final decision of the SSA. 20 C.F.R. § 414.1484.

In her decision, the ALJ found, among other things, that Plaintiff had several severe impairments, including depressive disorder/bipolar disorder, anxiety disorder, and obesity; that these impairments did not meet or medically equate to the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; and that Plaintiff has the residual functional capacity to perform light work as defined by 20 C.F.R. 416.967(b). Based on those findings, the ALJ denied Plaintiff's application. Plaintiff seeks review of that order per 42 U.S.C. § 405.

## II.   Legal Standard

The Court reviews the ALJ's decision to determine whether substantial evidence supported her opinion. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (quotation marks and citation omitted). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *Id.* (*quoting O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)). The Court will not "reweigh the evidence or substitute [its] judgment for that of the ALJ." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). That said, the Court cannot let a decision stand if it lacks sufficient evidentiary support, inadequately discusses the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

## III.   Discussion

The SSA uses a five-step process to evaluate whether someone qualifies for Supplemental Security Income or Disability Insurance Benefits, which Plaintiff applied for. *See*

42 U.S.C. §§ 423(d), 1382c(3); 20 C.F.R. §§ 404.1520(a), 416.920(a); *Donahue v. Barnhart*, 279 F.3d 441, 443 (7th Cir. 2002). At step one, the ALJ asks whether the claimant engages in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If no, step two asks whether the claimant has a severe mental or physical impairment. 20 C.F.R. 404.1520(a)(4)(ii). If yes, step three requires the ALJ to decide whether the claimant's condition "meets or equals" the severity of one or more impairments listed at 20 C.F.R. Part 404, Sub-part P, Appendix 1. If a claimant's impairment matches or is equivalent to something on the list, then she qualifies for benefits without more. 20 C.F.R. § 404.1520(a)(4)(iii). If no listing applies, then the ALJ moves to step four and must ascertain the claimant's "residual functional capacity" ("RFC"), which is the maximum work that someone seeking benefits can sustain considering their impairments. 20 C.F.R. § 404.1520(e). With the benefit of the RFC, the ALJ may deny benefits if a claimant with the described RFC can perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ moves to step five, where they must decide whether a significant number of jobs exist in the national economy that the claimant could perform, given her impairments, age, education, and work experience. *See Ruenger v. Kijakazi*, 23 F.4th 760, 761 (7th Cir. 2022); *see also* 20 C.F.R. § 404.1520(g). The claimant bears the burden of proof on steps one through four; it shifts to the Commissioner for step five.

    At step three, the ALJ in this case found that Plaintiff's impairments did not rise to the level of a disabling condition; specifically, any of the listed impairments at 12.04 or 12.06 in 20 C.F.R. Part 404, Subpart P Appendix 1.[2] At step four, she found that Plaintiff had the residual functional capacity to perform light work, albeit with certain restrictions. Accordingly, the ALJ denied Plaintiff's application for social security benefits.

---

[2] Plaintiff does not challenge the ALJ's decision with respect to her obesity-related findings. The Court, therefore, does not consider that finding here.

Plaintiff argues that the ALJ made several errors with respect to the unfavorable decision. Specifically, he argues that the ALJ erred in assessing Consultative Examiner Dr. Michelle Krucek's opinion, that the ALJ's RFC finding was untethered to the evidence, and that the ALJ did not properly evaluate his symptoms. The Court addresses each argument in turn.

### A.     Dr. Krucek's Opinion

Plaintiff first argues that the ALJ failed to properly assess Dr. Krucek's opinions. Dr. Krucek was an independent consultative examiner paid by the SSA to evaluate Plaintiff. Dr. Krucek evaluated Plaintiff one time on May 7, 2018, for about 30 minutes. (AR 1404-1409.) The medical records indicate that Krucek reviewed two prior consultative examinations and records from Gozi Health Services. (Certified Copy of Administrative Record ("AR") 1404, ECF No. 8.) She further noted that these records diagnosed Plaintiff with alcohol dependence, panic disorder with agoraphobia and an unspecified bipolar disorder. (AR 1408.) Dr. Krucek opined that Plaintiff was mildly limited in all aspects of understanding, remembering, and carrying out simple work due to bipolar mood fluctuation and panic symptoms; moderately limited in all aspects of understanding, remembering, and carrying out complex work; and markedly limited in all aspects of interacting with others if he were to become highly anxious and/or panicked and isolate himself. (AR 1411-1412.)

The ALJ afforded little weight to this opinion for two reasons. First, the ALJ noted that Dr. Krucek's findings were inconsistent with Plaintiff's prior medical treatment. For instance, records from Aunt Martha's Clinic and Dr. Sherrie Godbolt—Plaintiff's primary psychiatric clinic and physician—noted that Plaintiff's bipolar disorder was in remission for years. (*See, e.g.*, AR 1866 (noting bipolar disorder in partial or unspecified remission).) The ALJ also found Krucek's assessment inconsistent with Plaintiff's mental status exam findings at several prior

appointments and contradicted by his prior statements to providers. (AR 1553.) In short, the ALJ concluded that Krucek's opinion contradicted contemporaneous medical evidence from Godbolt and other providers.

Second, the ALJ noted that the potential for pecuniary gain by obtaining social security benefits may have induced Plaintiff to exaggerate, and thereby taint, Krucek's evaluation of Plaintiff. Thus, the ALJ found that this further supported her decision to afford little weight to Krucek's opinion.

The Court finds that the ALJ did not improperly weigh Dr. Krucek's opinion. How much weight an ALJ affords to a physician's opinions depends on several factors, such as the length, nature, and extent of the physician and claimant's treatment relationship, *see* 20 C.F.R. § 404.1527(d)(2)(I)-(ii), whether the physician supported his or her opinions with sufficient explanations, *see id.* § 404.1527(d)(3), and whether the physician specializes in the medical conditions at issue, *see id.* § 404.1527(d)(5); *see also Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006). If an ALJ discounts a physician's opinion after considering these factors, courts must allow that decision to stand so long as the ALJ "'minimally articulate[s]'" his reasons[.]" *Edler v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).

Here, the Court finds that the ALJ based her analysis on the evidence and articulated her reasons for discounting Krucek's opinion. The ALJ found that Plaintiff had moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. With respect to each of these areas, the ALJ relied on functional reports, various psychological consultative examinations (including Dr. Krucek's and prior exams), and psychiatric treatment records from Dr. Godbolt and Aunt Martha's Clinic. The ALJ also found that Plaintiff's alleged limitations were

5

inconsistent with his activities of daily living. For this, the ALJ cited evidence in the record that Plaintiff cared for his elderly mother and uncle, regularly shopped in stores, and managed household chores and finances. (AR 1540-42.)

The Court does not agree with Plaintiff's characterization that the ALJ did not consider certain evidence, or afforded disproportionate weight to stale evidence, or substituted her own judgment for that of a medical provider. To be sure, the ALJ discounted Dr. Krucek's opinion and did not find Plaintiff to be as limited as Dr. Krucek had with respect to Plaintiff's ability to interact with others. But the ALJ was not required to adopt Dr. Krucek's opinion uncritically. *See Simila v. Astrue*, 573, F.3d 503, 515 (7th Cir. 2009) (citing *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995)). In fact, she afforded little weight to all three consultative examinations—including the two that Plaintiff argues were outdated. (AR 1551-52.) Although the ALJ acknowledged these opinions and afforded them some weight, the ALJ primarily relied on contemporaneous medical records from Dr. Godbolt and Aunt Martha's Clinic to substantiate her impairment and residual functional capacity assessments. The ALJ was well within her authority to do this, particularly since Dr. Godbolt and Aunt Martha's Clinic provided Plaintiff ongoing treatment whereas Dr. Krucek's opinion was based on a single 30-minute examination. Thus, the Court finds that the ALJ articulated her reasons for discounting Dr. Krucek's opinion.

Similarly, the Court disagrees that the ALJ improperly evaluated Plaintiff's character rather than the medical evidence. Certainly, the ALJ noted the potential for monetary gain linked with the consultative exams. But the ALJ explained that this fact added to her reasons for discounting all the consultative opinions—not just Krucek's opinion. The Court does not interpret the ALJ's statement as an attack against Plaintiff's character or truthfulness, but rather as explaining an additional factor for why she discounted Plaintiff's statements regarding the

intensity and pervasiveness of his symptoms during his consultative exams.

Lastly, the Court does not find that the ALJ improperly discounted Krucek's opinion because it relied on subjective allegations. Although the ALJ mentioned that Krucek based her opinion, at least in part, on Plaintiff's subjective complaints, the crux of the ALJ's decision discounted the opinion because it contradicted other medical evidence. The Court will not reweigh the evidence or the weight afforded to each consultative opinion where evidence in the record reasonably supports the ALJ's decision. In sum, the Court finds that the ALJ did not err in evaluating the opinion evidence.

### B. Residual Functional Capacity

Next, Plaintiff argues that the ALJ's RFC findings did not comply with the narrative-discussion requirement of Social Security Ruling 96-8P and were untethered to the evidence. An RFC finding is the maximum work that a claimant can perform despite any limitations. *See* 20 C.F.R. § 404.1545(a)(1).

The SSA defines RFC as "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8P. An "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)." *Id.* "Although the responsibility for the RFC assessment belongs to the ALJ, not a physician, an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Amey v. Astrue*, Case No. 09-cv-2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012).

7

In this case, the ALJ found that Plaintiff has the residual functional capacity to perform light work as defined by 20 C.F.R. 416.967(b), except that he should avoid concentrated exposure to pulmonary irritants such as gases, dusts, and poorly ventilated areas; frequently balance, kneel and crawl; occasionally climb ladders, ropes, or scaffolds. (AR 1543.) The ALJ also found that Plaintiff can understand, remember, and carry out instructions for simple, routine, and repetitive type work in an environment with few daily changes and that is away from the public; that he should not be assigned tandem work or work with strict hourly production quotes; and that he could have occasional contact with co-workers and supervisors. (AR 1543.)

Plaintiff claims that the ALJ erred by omitting any allowances capturing his need to be off task for certain periods of time due to his limitations. In other words, Plaintiff argues that the ALJ erred by not making a finding that Plaintiff needed frequent breaks and time spent off task and away from this workstation that would result in him being unable to maintain consistent employment.

The Court disagrees with Plaintiff's assessment. The ALJ's opinion lays out each work limitation and the basis for each RFC finding. Indeed, the ALJ analyzed and distilled her RFC findings from a large amount of medical records and documented which evidence supported each specific finding. With respect to Plaintiff's anxiety and panic attacks about leaving his home, for instance, the ALJ noted that Plaintiff received very little, if any, treatment other than medications over the years, which improved his condition and adequately managed his symptoms. The ALJ further noted that Plaintiff refused any additional psychiatric treatment until roughly July 2020—implying that his condition was well-managed with medications. The ALJ's decision also pointed to repeated mental status exams at various presentations for physical ailments that showed normal or mostly normal mental conditions. (AR 1545-1546; 1553.)

8

And again, the ALJ noted findings from Dr. Godbolt that contradicted Plaintiff's claims. These records show that, with appropriate treatment, Plaintiff had repeat objective findings of normal mood. In addition, Plaintiff's episodes of fear of going into stores, shortness of breath, sweating, and shaking significantly improved when he ceased alcohol consumption and appropriately managed his medications. (*See e.g.*, AR 978-992.) The ALJ further recognized that although Plaintiff ceased treatment with Dr. Godbolt temporarily because of a loss of county care coverage, that even when he restarted treatment after 2017, Dr. Godbolt only diagnosed him with a mood disorder and noted that he did well with medication treatment. The records show that, at times, Plaintiff denied symptoms of depression, anxiety, and panic attacks. (AR 1881.)

Moreover, the ALJ found the medical evidence inconsistent with Plaintiff's claims that he needed allowances for being off task during any potential employment. The ALJ specifically found that Plaintiff was able to go out and be around others as demonstrated by his activities and presentations for treatment. (AR 1554.) For example, the record contained non-medical evidence that Plaintiff would shop and care for sick family members, walk, drive, and perform household activities. The ALJ considered Plaintiff's alleged symptoms but concluded that the conditions that he be limited to no tandem work and only occasional interactions with others would be sufficient to address his limitations. In short, the Court finds that substantial evidence supports the ALJ's RFC limitation findings and that she articulated the basis for her findings.

### C. Symptom Evaluation

Finally, Plaintiff argues that substantial evidence did not support the ALJ's evaluation of his symptoms. Evaluating a claimant's symptoms proceeds under a two-step process. First, the SSA determines whether there is "objective medical evidence from an acceptable medical source" showing that the applicant has a "medical impairment(s) which could reasonably be

9

expected to produce the pain or other symptoms." 20 C.F.R. § 404.1529(a). If there is such evidence, then the SSA proceeds to the second step, in which it "evaluate[s] the intensity and persistence" of the applicant's symptoms in order to "determine how [they] limit [the applicant's] capacity for work." 20 C.F.R. § 404.1529(c)(1); *see* SSR 16-3p, 2016 WL 1119029, at *4-5 (SSA Mar. 16, 2016).

At step two, the SSA begins with the objective medical evidence, but does not rely solely on it because "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." SSR 16-3p, 2016 WL 1119029, at *5. The agency must "carefully consider" all record evidence from "medical sources or nonmedical sources," 20 C.F.R. § 404.1529(c)(3), and it "evaluate[s] [the applicant's] statements," including "statements about the intensity, persistence, and limiting effects" of her symptoms, "in relation to the objective medical evidence and other evidence" to determine whether she is disabled. 20 C.F.R. § 404.1529(c)(4). In doing so, the ALJ must ask "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the applicant's] statements and the rest of the evidence, including [the applicant's] history, the signs and laboratory findings, and statements by . . . medical sources or other persons about how [the applicant's] symptoms affect [her]." *Id.* "If an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record, [the SSA] will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *7.

SSR 16-3p defines "a symptom as the individual's own description or statement of his or her physical or mental impairment(s)." SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). An ALJ must "evaluate the intensity and persistence of an individual's symptoms" so she can

10

determine how those symptoms limit the individual's "ability to perform work-related activities." *Id.* The Court will overturn this evaluation only if it "is 'patently wrong,' meaning it lacks explanation or support." *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). This is an extremely deferential standard because the ALJ is "in the best position to see and hear the witnesses and assess their forthrightness." *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013); *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). The claimant bears the burden of demonstrating that an ALJ's subjective symptom assessment is "patently wrong." *See Horr v. Berryhill*, 743 F. App'x 16, 20 (7th Cir. 2018); *Joe R. v. Berryhill*, 363 F. Supp. 3d 876, 884 (N.D. Ill. 2019).

      The Court finds that the ALJ properly assessed Plaintiff's symptoms. First, the Court does not find that the ALJ erred by faulting Plaintiff for pursuing an alternative form of therapy for his depression, *i.e.*, walking, as Plaintiff argues. Instead, the ALJ's decision simply cites the fact that Plaintiff took daily walks in his neighborhood, demonstrating inconsistent behavior with his allegations of extreme anxiety and panic attacks. (AR 1548.)

      Second, Plaintiff argues that the ALJ did not properly account for his loss of medical care coverage to explain his inconsistent treatment. But the ALJ acknowledged that Plaintiff lost medical care coverage and focused her analysis on when Plaintiff resumed treatment, noting that even once he resumed treatment he presented with repeated normal conditions and that his conditions stabilized with proper medication management. (AR 1546-47.) Accordingly, the Court finds that the ALJ did not fail to consider Plaintiff's loss of coverage in her analysis.

      Third, Plaintiff argues that the ALJ erred by citing evidence that his mental status exams were normal at various exams for physical concerns or psychiatric medication management.

11

Plaintiff argues that doctors did not look for psychiatric symptoms at these appointments and therefore the ALJ erred considering these findings.

Again, even aside from these evaluations, the medical evidence in the record supports the ALJ's decision. Indeed, Dr. Godbolt treated Plaintiff for, among other things, his anxiety and depression conditions. As his treating psychiatric physician over the course of several years, the ALJ was entitled to afford Dr. Godbolt's evaluations controlling weight. *See Donna G. v. Saul*, Case No. 17-cv-8425, 2021 WL 825650, at *4 n.3 (N.D. Ill. March 4, 2021) (applying treating physician rule to applications submitted before March 27, 2017); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008); *see also* 20 C.F.R. § 404.1520c(c) (stating factors must consider when evaluating physician opinion). Moreover, while some of these appointments were for physical concerns, several others included psychotherapy, psychiatry evaluations, and progress notes for Plaintiff's psychiatric conditions. (*See, e.g.*, AR 882-86; 887-91; 908-909; 910-13; 926-30; 978-80; 983-84.) The Court, therefore, disagrees that the ALJ improperly relied on the observations made during these evaluations.

Fourth, Plaintiff points out that the social security regulations do not require hospitalization for a mental health impairment to be a disabling condition. Thus, Plaintiff argues that the ALJ erred by pointing out that he had no hospitalizations for mental health conditions. But the Court interprets the ALJ's decision differently on this point. The Court reads the ALJ's decision to simply point out that with proper medication management, Plaintiff's symptoms were well controlled. The Court does not read the ALJ's opinion to reason that Plaintiff's symptoms were less intense solely because he was not hospitalized.

Fifth, Plaintiff argues that the ALJ did not explain why the fact that he cared for his mother and uncle undercut the severity of his alleged limitations. The Court disagrees. The ALJ

12

described how Plaintiff's daily activities—*i.e.*, shopping, regularly interacting with his family, managing household finances and chores—were inconsistent with the severity of his alleged limitations. The ALJ properly considered how these daily living activities affected Plaintiff's ability to work and the severity of his alleged conditions. *See* 20 C.F.R. § 404.1529. What's more, beyond just the non-medical evidence related to Plaintiff's care for his mother and uncle, the medical evidence and opinions further support the ALJ's findings regarding the intensity and persistence of Plaintiff's symptoms. Accordingly, the Court finds that the ALJ did not err with respect to her cumulative analysis of Plaintiff's symptoms.

## IV. Conclusion

The Court grants the Commissioner's motion for summary judgment [15] and denies Plaintiff's motion for summary judgment [9]. Judgment is entered in favor of the Commissioner. Civil case terminated.

**SO ORDERED.**                                               **ENTERED: August 10, 2022**

                                                                                                   **HON. JORGE ALONSO**
                                                                                                   **United States District Judge**